APPEAL OF DICKERMAN & ENGLIS, INC.

Docket No. 4928. Decided July 28, 1926.

*Maxwell Goldstein, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before GRAUPNER,[1] TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in income and profits taxes in the amount of $72.14 for the calendar year

---

[1] This decision was prepared during Mr. Graupner's term of office.

1920. The contentions of the taxpayer are that it is entitled to classification as a personal service corporation and that the Commissioner failed to use proper comparatives in the computation of tax under section 328 of the Revenue Act of 1918. No evidence was offered in support of the latter contention.

FINDINGS OF FACT.

The taxpayer is a New York corporation with its principal place of business in New York City.

Prior to the incorporation of the taxpayer in 1918, the business had been conducted by the partnership of Dickerman and Englis. The corporation was organized for purposes of better administration of the business while A. L. Dickerman, Jr., who became its president, was in the military service of the United States.

The business of the taxpayer in 1920 was that of selling coal, both as principal and as agent. The president secured about 90 per cent of the taxpayer's business, the balance being produced by a salesman in New Jersey from customers whose business the president had originally obtained. Prior to 1920 the president spent, on an average, five days per week on the road soliciting orders. In 1920 a strike of the anthracite coal miners caused a ready market for coal. During that year the president averaged approximately three days each week traveling. The balance of the time he spent in the taxpayer's office.

In those cases where the taxpayer acted as agent, it obtained the orders and transmitted them to the coal company for which it was acting. The coal company made shipment to, and billed, the purchaser direct, sending to the taxpayer a memorandum of the shipment. In such cases the coal company assumed the duty of collecting from the purchaser and the taxpayer received a commission only when the accounts were paid by the purchasers.

During 1920 the company for which the taxpayer was the agent was unable to supply all of the orders obtained by the taxpayer, and to meet this situation taxpayer purchased coal from other companies. In such cases, upon receiving an inquiry for coal, it would call upon mining companies to learn what quantity and at what price it could obtain coal, and would then notify the prospective purchaser as to the price and the amount which it could deliver, adding to the mine price, as commission, 25 to 50 cents per ton. In these cases the coal was shipped direct to the purchaser by the producer, who billed the taxpayer for shipment. The taxpayer in turn collected from the purchaser. No coal was bought unless an order had previously been secured.

The authorized capital stock of the taxpayer was 500 shares of the par value of $100 each. On November 1, 1918, 200 shares were issued as follows:

|  | Shares. |
| --- | --- |
| Alton L. Dickerman, Jr | 10 |
| Urla S. Dickerman | 130 |
| Robert Eble | 10 |
| Hazel E. Reynolds | 10 |
| William O. Bartlett | 20 |
| William F. Englis | 20 |
| Total issued | 200 |

There were no changes in stock ownership until 1920. On January 15, 1920, 12 of the shares standing in the name of William O. Bartlett were transferred to Charles W. G. Baiter and 8 to Alton L. Dickerman, Jr. On October 4, 1920, the 12 shares were transferred from Baiter to Dickerman. The stock certificate for 20 shares originally issued to Englis was canceled on December 29, 1920.

Urla S. Dickerman was the wife of Alton L. Dickerman, Jr. No payment was made by her for the stock issued in her name. At the time of the organization of the taxpayer, she endorsed in blank the certificate for the 130 shares issued to her and placed it in the safe deposit vault of her husband to which she had access and in which she kept some of her personal possessions in addition to the stock certificate. Mrs. Dickerman took no active part in the conduct of the business of the taxpayer.

Robert Eble was a law clerk in the office of Dickerman's attorney. Hazel E. Reynolds was an employee of the taxpayer. The equitable ownership of stock standing in the names of Urla S. Dickerman, Robert Eble, and Hazel E. Reynolds was at all times in Alton L. Dickerman, Jr.

On December 31, 1920, the stock issued and outstanding was registered as follows:

|  | Shares. |
| --- | --- |
| Alton L. Dickerman, Jr | 30 |
| Urla S. Dickerman | 130 |
| Robert Eble | 10 |
| Hazel E. Reynolds | 10 |
| Total | 180 |

All of such stock was the property of Alton L. Dickerman, Jr.

During 1920, William F. Englis occasionally discussed market conditions with Dickerman but took no active part in making sales for the taxpayer.

Dickerman, the president, and Hazel E. Reynolds, secretary and treasurer, devoted their entire time to the business of the taxpayer

and received salaries, respectively, of $15,000 and $2,985. No sales were made by the secretary and treasurer.

The taxpayer's gross profit in 1920 was realized as follows:

*From trading as principal:*

| | | |
|---|---:|---:|
| Coal sales | $729, 945. 03 | |
| Miscellaneous sales | 15, 392. 89 | |
| | | $745, 337. 92 |
| Coal purchased | 673, 651. 07 | |
| Cost of sales | 29, 820. 33 | |
| | | 703, 471. 40 |
| Gross profit on coal billed | | 41, 866. 52 |

*From trading as agent:*

| | | |
|---|---|---:|
| Commissions | | 49, 250. 40 |
| Interest on deposits | | 72. 44 |
| Gross profit | | 91, 189. 36 |

The expenses for 1920 as determined by the Commissioner, other than salary to Dickerman, were as follows:

| | |
|---|---:|
| Salaries and bonuses | $10, 638. 01 |
| Office supplies and expenses | 9, 287. 27 |
| Traveling expenses | 5, 870. 22 |
| Commissions paid | 9, 330. 04 |
| Advertising | 1, 007. 94 |
| Legal expenses | 3, 833. 34 |
| Depreciation | 238. 01 |
| Loss on bad debts | 880. 60 |
| Adjustments with customers | 1, 716. 48 |
| Loss on sale of automobile | 53. 33 |
| | 42, 855. 24 |

During 1920 the office force was made up of Dickerman, Miss Reynolds, the secretary and treasurer, who also acted as office manager, a bookkeeper, two stenographers, and a young man without previous experience in the coal business who was employed on a salary and commission basis to keep in touch with the New Jersey customers previously secured by Dickerman; who found it impossible to cover that territory in person.

Of the $9,330.04 commissions paid, approximately $5,000 was paid to a former associate of the taxpayer who secured an order for coal, which order was handled by the taxpayer as principal. The balance of the commissions was paid to various persons who brought business to the taxpayer, some of which orders were handled by it as principal and some as agent on a commission basis.

The balance sheets of the taxpayer were as follows:

|  | Dec. 31, 1919. | Dec. 31, 1920. |
|---|---|---|
| **ASSETS.** |  |  |
| Cash | $2, 913. 05 | $2, 854. 15 |
| Accounts receivable | 32, 573. 31 | 81, 345. 66 |
| Furniture and fixtures | 885. 49 | 762. 67 |
| Automobile | 400. 00 | 3, 066. 67 |
| Good will | 14, 500. 00 | 14, 500. 00 |
| Stock | | 3, 000. 00 |
|  | 51, 271. 85 | 105, 529. 15 |
| **LIABILITIES.** |  |  |
| Accounts payable | 30, 883. 15 | 56, 275. 72 |
| Capital stock | 20, 000. 00 | 20, 000. 00 |
| Surplus | 388. 70 | 29, 253. 43 |
|  | 51, 271. 85 | 105, 529. 15 |

Of the accounts receivable on December 31, 1919, $29,912.35 was due for coal sold or confiscated by the railroads. Of the accounts payable on that date $27,951 was due for coal purchased.

Of the accounts receivable on December 31, 1920, $56,154.08 was due for coal sold or confiscated. The balance represented various items, including commissions due from the mining company for which taxpayer acted as agent. Of the accounts payable on the same date $54,032.27 was the amount owing for coal purchased.

Taxpayer borrowed no money during 1920. In those sales which were made as principal, collections were usually made against receipt of bill of lading by the purchaser, and remittance was made by taxpayer to the company from which coal was purchased immediately upon receipt of payment from the purchaser. In cases where collection was not made against bill of lading, payment was due on the fifteenth day of the month following shipment, and payment was made by taxpayer when received by it from its purchaser.

During 1920 the demand for coal exceeded the supply. The ability to furnish coal at a satisfactory price, and not the ability to extend credit, was the factor which produced the sales made by the taxpayer.

Capital, whether invested or borrowed, was not a material income-producing factor.

Less than 50 per cent of taxpayer's gross income for 1920 was derived from trading as a principal or from Government contracts.

The income for 1920 is to be ascribed primarily to the activities of Dickerman, the principal stockholder, who was regularly engaged in the active conduct of the affairs of the corporation.

> *Taxpayer is entitled to classification as a personal service corporation. Order of redetermination will be entered on 15 days' notice, under Rule 50.*

LITTLETON and TRAMMELL dissent.